OPINION OF THE COURT
Peter P. Rosato, J.
On September 16, 1983 and September 19, 1983, this court held a joint Mapp and Huntley hearing. The testimony adduced at said hearing, as capsulized below, raises an interesting question, at the threshold, as to whether or not either or both of these defendants have the requisite standing to challenge the instant search.
FINDINGS OF FACT
On July 31,1982, the defendants both testified that they were en route to a party in the Riverdale area of The Bronx to which Collins had been invited. However, they quickly became lost and at a point in time somewhere between 2:00 and 3:00 a.m. they found themselves approaching the Yonkers Toll Plaza on the northbound lane of the S^w Mill River Parkway. Defendant Robinson was driving the car, a 1978 Cadillac; codefendant Collins occupied the front passenger seat. The defendants entered the exact change booth, paid the toll, and began to pass through same. Here the testimony of the officer and the defendants differ somewhat. Police Officer Wasinski testified that the defendants’ automobile struck the curb on top and came down as defendants’ auto passed through the booth, attracting his attention and causing him to signal defendants to the side. *268 The defendants, on the other hand, testified that because they were lost, they pulled over, to ask the officers for directions. Both denied that their vehicle struck the toll booth curb. In any event, the officer and his partner (Mackey) approached defendants’ vehicle and requested the defendant Robinson’s driver’s license, registration and insurance card. In the meantime, he noticed a six-pack of beer on the floor at defendant Collins’ feet. At this time, defendant Robinson gave Police Officer Wasinski a Georgia license and a registration which did not match this vehicle. A check of Robinson’s license revealed that his privilege to drive in New York had been suspended. Police Officer Wasinski then inquired of Robinson’s state of sobriety and requested he take a sobriety test, which Robinson consented to do at the officer’s vehicle. Robinson passed the test. A check of the ownership of defendants’ vehicle revealed the owner to be one Francisco Crispin, and when asked about the owner, the defendant Robinson stated that defendant Collins jDoprowed the vehicle from said owner, whom they knew as “Paco”. The defendant Collins apparently corroborated this shortly thereafter. (Collins also introduced into evidence at the hearing, as exhibit A, a Motor Vehicle Bureau certified record indicating the owner to be the said Mr. Crispin.) The officer then asked for and received the defendant Collins’ New York State driver’s license and other identification, before asking him to step out and move to the rear of defendants’ vehicle.
Officer Wasinski testified that he considered the defendants’ car impounded as of the moment he learned that neither defendant was the owner and when neither was able to produce proper registration. At this point, the officer testified that he returned to defendants’ vehicle for the purpose of retrieving the beer on the front floor. As he opened the car door and leaned into the vehicle with his flashlight, he noticed for the first time the butt of a gun under the front seat. Wasinski drew his service revolver and ordered both defendants to the ground, whereupon he handcuffed them and placed them under arrest. Thereafter, Police Officer Wasinski returned to the interior of defendants’ vehicle, where he found a small amount of marihuana in a closed utility bag under the seat. He then *269 opened the trunk with defendants’ keys and found more marihuana «-inside a closed gym bag.
Turning to the threshold question of defendants’ standing to challenge the search and seizure, this court is well aware that the “automatic standing” rule has now been abandoned and replaced by the far more fluid notion of one’s “reasonable expectation of privacy”. In attempting to apply this new test, whether it be in relation to a home or an auto, both the Supreme Court, as well as various State appellate courts, have stated that concepts borrowed from the law of property are not necessarily controlling; nevertheless, in distinguishing the various fact situations the courts still seem to fall back on such concepts in measuring or evaluating one’s so-called expectation of privacy. (Rakas v Illinois, 439 US 128; People v Lerhinan, 90 AD2d 74, 76.) In applying such concepts to an automobile, it can be easily understood why an owner-operator would have the most expectation of privacy, while a mere passenger would have the least. In the instant case, the defendants fall somewhere between these two extremes; while defendant Robinson was the operator in control of the vehicle, the defendant Collins was the lawful borrower with the authority to permit Robinson to operate the vehicle.
As alluded to by the Court of Appeals in People v David L. (56 NY2d 698), adopting the dissenting opinion of Mr. Justices Hopkins and Weinstein in the Second Department (81 AD2d 893), the operator, here defendant Robinson, certainly demonstrated sufficient possessory rights to complain in regard to the police intrusion. As to Collins, as the lawful borrower and the only one present in the car by express authority of the owner, it is this court’s opinion that his expectation of privacy rises to a level at least one step above that of a mere passenger. For this reason, Collins, who had authority at least equal to Robinson with respect to the keys to the vehicle, also demonstrates a possessory interest in the automobile, a fact deemed most relevant to the Supreme Court in Rakas (supra [see concurring opn, Powell, J., at pp 154-155]). Therefore, unlike a mere passenger, one who legitimately borrows a car, in this court’s opinion, thereby obtains a legitimate expecta *270 tion of privacy in the automobile sufficient to grant him standing to complain.
Additionally, this court is cognizant of the fact that certain post -Rakas decisions by our Court of Appeals allude to the “location” or “particular area” criteria utilized by the Supreme Court in Rakas (supra) in applying the expectation of privacy standard (see People v Ponder, 54 NY2d 160; People v Hunter, 55 NY2d 930). Nevertheless, those decisions are distinguishable from the instant case since the possessory rights of those defendants were virtually nonexistent, one being a casual visitor and the other a car thief. Rather, with respect to particular areas within an automobile, this court is guided more by the Court of Appeals decision in People v David L. (supra). While that court had the clear opportunity to adopt the strict “location” approach of Rakas, it adopted instead the reasoning of Justices Hopkins and Weinstein, dissenting at the Appellate Division in David L. (supra), who seemed to focus upon the individual’s possessory right in relation to the place in general, distinguishing, for example, a car as opposed to a dwelling (citing People v Kreichman, 37 NY2d 693, 698), rather than the particular location or area within the vehicle where the item was actually seized. While this narrow issue is certainly not free from all doubt, this court must be guided by the approach ultimately adopted by a majority of the Judges of the Court of Appeals in David L. (supra).
Accordingly, this court finds that both defendants have standing to challenge the instant search. Additionally, while the court will not address the full merits herein, for the benefit of the reader, the court went on to grant both defendants’ motions to suppress, based on what the court found to be both an unlawful stop of the vehicle under People v Ingle (36 NY2d 413), and an improper impoundment of the vehicle. Contrast People v Roman (53 NY2d 39) and People v Gonzalez (92 AD2d 512), where the impoundment of the vehicle was held proper given the fact that the defendant had lawfully been arrested and the police had no alternative but to impound the vehicle, unlike the instant case where a licensed operator, i.e., Mr. Collins, was available to drive the car away.