539 So.2d 464 (1989)
STATE of Florida, Petitioner,
v.
Martin Leslie WELLS, Respondent.
No. 69363.
Supreme Court of Florida.
March 2, 1989.
*465 Robert A. Butterworth, Atty. Gen., Joseph N. D'Achille, Jr. and Fleming Lee, Asst. Attys. Gen., Daytona Beach, and Elizabeth Masters and Walter M. Meginniss, Asst. Attys. Gen., Tallahassee, for petitioner.
Sharon W. Ehrenreich of Moore & Ehrenreich, Gainesville, for respondent.
Enoch J. Whitney, General Counsel and R.W. Evans, Asst. Gen. Counsel, Tallahassee, amicus curiae for Dept. of Highway Safety and Motor Vehicles.
PER CURIAM.
On motion for rehearing by petitioner, we withdraw our prior opinion in this cause and substitute the following as the opinion of the Court.
We have for review Wells v. State, 492 So.2d 1375 (Fla. 5th DCA 1986), based on express and direct conflict with State v. Wargin, 418 So.2d 1261 (Fla. 4th DCA 1982). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We approve in part and quash in part the decision of the district court below.
While driving a car loaned by a friend, respondent was stopped by the highway patrol for speeding. The trooper noticed the smell of alcohol upon respondent's breath and arrested him for driving under the influence. At this time, respondent agreed to accompany the trooper to the station to take a breathalyzer test.[1] When respondent asked if he could retrieve a coat from the automobile, the trooper agreed, but accompanied respondent to the vehicle. At this point, the trooper saw an amount of cash lying on the car's floorboard. 492 So.2d at 1375-76.
*466 Suspicious of the cash's origin, the trooper asked respondent to open the trunk of the car. Respondent agreed, stating that he did not know what was in the trunk. However, neither respondent nor the trooper were able to manipulate a special locking mechanism that opened the trunk only when the key was pushed in and turned simultaneously. Giving up the effort, the trooper told respondent that the automobile must be impounded and received permission to force the trunk open if necessary and look inside. The trooper did not ask for or receive permission to look in the passenger compartment. Id. at 1376.
The car subsequently was transported to a facility under contract with the state, where a search was conducted. During this search, two marijuana cigarette butts were found in an ashtray. The trooper, assisted by others, opened the trunk with the key and found a locked suitcase inside. Under the direction of the trooper, employees of the facility attempted to pry open the suitcase with a knife. Some ten minutes later they succeeded, and found a garbage bag inside containing a large amount of marijuana. Id.
Respondent was charged with possession of a controlled substance. After his motion to suppress the contraband was denied at trial, respondent pled nolo contendere, but reserved his right to appeal on the suppression issue. The Fifth District later determined that the trial court had erred, and ordered the contraband suppressed. Id. at 1375, 1378. From this order, the state now seeks review.
The facts of this case raise three distinct questions of search and seizure law: the scope of the consent search conducted in this instance, the propriety of opening the locked container found during the automobile inventory search, and the propriety of the impoundment of respondent's vehicle.

The Consent Search
The state urges us to hold that respondent's general consent to open and look into the trunk of the automobile was sufficient to authorize the opening of any locked or closed containers found there. In support of this argument, the state contends that Wargin correctly extended the principles of United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), to the consent-search context. We cannot agree.
Ross clearly stands for the proposition that, so long as probable cause exists to search an automobile, the police lawfully can search any container found inside. Thus, the Ross Court upheld the search of an automobile after the police received a tip from a reliable informant that drugs were being sold from the vehicle, stopped it and found a paper bag and a zippered pouch containing contraband and a large amount of cash. 456 U.S. at 800-01, 102 S.Ct. at 2160-61. Based on these facts, Ross held: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." Id. at 825, 102 S.Ct. at 2173 (emphasis added).
There was no issue of a consent search in Ross. Indeed, the principles that apply to probable cause searches are totally incongruous to the freedom of choice inherent in consent. As State v. Fuksman, 468 So.2d 1067 (Fla. 3d DCA 1985), and the district court below recognized:
The considerations upon which the holding in Ross is grounded do not exist in the consent search context where there is no probable cause. If a person consents to the search of a vehicle containing luggage and a search of the vehicle alone reveals nothing, the problem of the possible greater intrusion by detention or seizure does not arise because the probable cause necessary to secure the warrant is nonexistent. Therefore, the officer has no dilemma because he has no choice; he must let the consenting party be on his way. It is because the citizen has not given the police probable cause to believe his vehicle contains contraband that he has the right to proceed without official interference. Absent probable cause, the police can engage in the greater intrusion of searching the luggage only under circumstances in which the scope of the consent to search *467 is defined clearly enough to include the luggage.
Fuksman, 468 So.2d at 1070. A consensual search by its very definition is circumscribed by the extent of the permission given, as determined by the totality of the circumstances. Id. On the other hand, a probable cause search and its scope are compelled, no matter what might be the wish of the individual. A theory based on consent and one based upon state-sponsored coercion thus are incompatible, and fusing them could lead to absurd results. Under such logic, the search of the trunk of a car would be permitted even if the defendant had said, "You can look in my car but not in my trunk."
Thus, we decline to apply Ross to consent searches, and, to the extent it conflicts with our opinion today, we disapprove Wargin. We cannot agree that the state and its agents, by receiving an ill-defined or limited consent to be searched, suddenly are vested with all the authority conferred by a warrant. Such a holding effectively would vitiate the entire theory upon which the consent search rests.
We also concur with the district court's conclusion that the consent given in this instance did not permit the police to pry open locked luggage with a knife. Respondent's permission merely indicated that the police could look into the automobile trunk. This was an insufficient basis for the police action that followed.
In so holding, we decline to establish a rule that effectively would countenance breaking open a locked or sealed container solely because the police have permission to be in the place where that container is located, as in this instance. This would render the very act of locking or sealing the container meaningless and would utterly ignore a crucial concern underlying fourth amendment jurisprudence: the expectation of privacy reasonably manifested by an individual in his locked luggage, no matter where that luggage is located.[2]
When the police are relying upon consent to conduct a warrantless search, they have no more authority than that reasonably conferred by the terms of the consent. If that consent does not convey permission to break open a locked or sealed container, it is unreasonable for the police to do so unless the search can be justified on some other basis. Our own courts generally have agreed on this principle. State v. Carney, 423 So.2d 511 (Fla. 3d DCA 1982) (permission to go aboard boat did not give consent to open hidden compartments and containers therein); Loftis v. State, 391 So.2d 219 (Fla. 1st DCA 1980) (defendant's cooperation in opening truck did not give agricultural inspector consent to remove and open taped package), review denied, 399 So.2d 1146 (Fla. 1981); Major v. State, 389 So.2d 1203 (Fla. 3d DCA 1980) (no consent where defendant opened tote bag for airport officer to look in, but where officer spontaneously reached in and *468 grabbed a nasal inhaler containing contraband), review denied, 408 So.2d 1095 (Fla. 1981); Luxenburg v. State, 384 So.2d 742 (Fla. 1st DCA 1980) (opening vehicle to agricultural inspector did not authorize him to slit open bag with knife); Moorehead v. State, 378 So.2d 123 (Fla. 2d DCA 1980) (consent for officer to look at pool cue did not authorize unscrewing of cue to see what was rattling inside); Villari v. State, 372 So.2d 522 (Fla. 1st DCA 1979) (no consent when defendant allowed access to vehicle but asked "Don't you need a warrant" when officers approached containers and luggage); Rose v. State, 369 So.2d 447 (Fla. 1st DCA 1979) (no consent when defendant allowed officers to look in camper but apparently denied access to containers); Raleigh v. State, 365 So.2d 1048 (Fla. 4th DCA 1978) (no consent where occupants acquiesced to warrantless search of vehicle's trunk where officer opened trunk himself without asking permission).
In the present case, the arresting officer plainly stated that he had no actual consent to open the suitcase found in the automobile trunk.[3] We thus must agree with the court below that the general consent to look in an automobile trunk in this case did not constitute permission to pry open a locked piece of luggage found inside.[4]Wells, 492 So.2d at 1378. The very act of locking such a container constitutes a manifest denial of consent to open it, readily discernible by all the world. It creates a legally recognized zone of privacy inside that container, Arkansas v. Sanders, 442 U.S. 753, 765-66, 99 S.Ct. 2586, 2594, 61 L.Ed.2d 235 (1979), that is protected under the United States Constitution and Florida's privacy amendment from the kind of governmental intrusion without probable cause that occurred in this case. See Art. I, § 23, Fla. Const.
As to the marijuana cigarette butts found in the ashtray, we conclude that their seizure is not sustainable under a consent theory, since the trooper neither asked for nor received permission to search the passenger compartment.

The Inventory Search
We must also reject the state's contention that the seizure of the luggage was independently permissible under an inventory search theory. In Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739, 107 S.Ct. 738 (1987), the United States Supreme Court delineated the requirements for opening sealed containers during a proper inventory search. Bertine stated:
We emphasize that, in this case, the trial court found that the police department's procedures mandated the opening of closed containers and the listing of their contents. Our decisions have always adhered to the requirement that inventories be conducted according to standardized criteria.
*469 Id. 107 S.Ct. at 742 n. 6 (emphasis added; citations omitted). As Justice Blackmun noted in his special concurring opinion, joined by two other justices:[5]
The underlying rationale for allowing an inventory exception to the Fourth Amendment warrant rule is that police officers are not vested with discretion to determine the scope of the inventory search. This absence of discretion ensures that inventory searches will not be used as a purposeful and general means of discovering evidence of crime. Thus, it is permissible for police officers to open closed containers in an inventory search only if they are following standard police procedures that mandate the opening of such containers in every impounded vehicle.

Id. at 744 (Blackmun, Powell & O'Connor, JJ., concurring) (emphasis added; citation omitted).
The impermissible discretion to open or not to open containers is evident in this case. Contrary to Bertine's holding, the Florida Highway Patrol ("Patrol"), at least upon this record, operates under no mandatory standardized policy regarding closed containers. Unlike in Bertine, this record is devoid of any trial-court finding "that the police department's standard procedures did mandate the opening of closed containers and the listing of their contents." Id. Joining this action as amicus curiae, the Patrol itself has submitted copies of relevant portions of its Policy Manual, which fail to address the question. Chapter 16 of the Policy Manual, governing the receipt of property and vehicles, speaks in general terms and requires nothing more than an "[i]nventory of all articles in the vehicle... such as articles of clothing, equipment and tools." Policy Manual, at 16-4. There is no mention of opening closed containers.
In the absence of a policy specifically requiring the opening of closed containers found during a legitimate inventory search, Bertine prohibits us from countenancing the procedure followed in this instance. The police under Bertine must mandate either that all containers will be opened during an inventory search, or that no containers will be opened. There can be no room for discretion. Since this record reveals no such mandatory policy, we must hold that the opening of the luggage in this instance violated Bertine.

The Impoundment Issue
Finally, we find that the impoundment in this instance, and hence the search of the interior of the car that followed was proper under Bertine. This conclusion is compelled by the fact that, to the extent of any inconsistency, Bertine has superseded Miller v. State, 403 So.2d 1307 (Fla. 1981), and Sanders v. State, 403 So.2d 973 (Fla. 1981). Under the analysis in Bertine, we believe the Patrol is not compelled to provide an alternative to impoundment, as we held in Miller and Sanders. Thus, we believe the officer in this instance acted reasonably by choosing to impound an automobile containing several thousands dollars in cash rather than leave it unprotected at the roadside.
For this reason, we conclude that the seizure of the marijuana cigarette butts in this instance was permissible as an incident of a proper impoundment. See Art. I, § 12, Fla. Const. Since the cigarette butts were not inside any closed or locked container, the suppression of the butts was improper under Bertine.
We, thus, approve in part and quash in part the result reached by the district court below, and remand for proceedings consistent with this opinion. No renewed motion for rehearing will be entertained.
It is so ordered.
EHRLICH, C.J., and BARKETT, GRIMES and KOGAN, JJ., concur.
SHAW, J., dissents with an opinion, in which OVERTON and McDONALD, JJ., concur.
*470 SHAW, Justice, dissenting.
Article I, section 12 of the Florida Constitution provides that rights granted therein involving searches and seizures will be construed in conformity with the fourth amendment to the United States Constitution, as interpreted by the United States Supreme Court. Thus, the issue of impoundment and inventory search is controlled by South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and its progeny. I agree with the majority that Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), has overruled Miller v. State, 403 So.2d 1307 (Fla. 1981), and Sanders v. State, 403 So.2d 973 (Fla. 1981), that the police are not required to provide an alternative to impoundment, and that the marijuana cigarette butts found in the car's ashtray are admissible. For the reasons which follow, I do not agree that Bertine mandates exclusion of the eighteen pounds of marijuana found in the locked suitcase.
Wells was stopped for speeding on a rural road between Palatka and St. Augustine in the evening hours. He alighted from his car and produced an expired driver's license and a car title in another's name. After the officer detected alcohol on his breath, Wells failed a roadside sobriety test and was arrested for driving under the influence. Wells asked, however, to retrieve a coat from the car. While doing so, the officer saw a large sum of cash lying on the floorboard in front of the driver's seat. Wells gave conflicting explanations of this money and it was impounded and inventoried. The arresting officer asked Wells to open the car trunk and Wells agreed, saying he did not know what was inside, but neither the officer nor Wells could open the trunk. Wells agreed that the trunk could be forcibly opened, if necessary, after towing. The car was left with a backup officer and later towed. The arresting officer transported Wells to the local police station for a breathalyzer test and proceeded to the storage area to inventory the car. The arresting officer found two marijuana cigarette butts in the car's ashtray. The tow operator then opened the trunk where a locked suitcase was found. The suitcase was forced open and eighteen pounds of marijuana in a trash bag were seized.
The majority holds that the police acted properly in impounding the car. However, relying primarily on Bertine, the majority holds that the eighteen pounds of marijuana should be excluded because Florida Highway Patrol standardized procedures do not specifically mandate that locked containers found in impounded cars be opened and inventoried. Although the FHP can easily remedy this perceived deficiency in their operating instructions, I am persuaded that the current instructions effectively mandate the opening and inventorying of such closed containers when a vehicle is impounded and that these instructions are indistinguishable from those in Bertine.
The inventorying of the contents of impounded cars is based on three distinct needs: to protect the owner's property; to protect the police against claims over lost or stolen property; and to protect the police from potential dangers, such as explosives. Opperman, 428 U.S. at 369, 96 S.Ct. at 3097. The Florida Highway Patrol, Forms and Procedures Manual, section 16.00.00, provides:
In the course of duty on a day to day basis, it is necessary for the protection of the Trooper and the Department to inventory vehicles being towed and/or stored. Vehicles which are towed as a result of an accident, abandoned, seized, incident to an arrest, or otherwise detained in storage, and not in the possession of the owner become the responsibility of the impounding officer. The officer is liable for the vehicle, its parts and contents. Therefore, for the protection of the officer and the Department, the following forms and instructions have been developed for the Trooper to inventory and make a record of vehicle and private property on an inventory sheet that will also serve as a receipt with (1) a copy for the Department, (2) a copy for the towing company, (3) a copy of release, (4) a copy for the impounding officer, and (5) a copy for the owner/or *471 driver. The same amount of copies of the Property Receipt with the same designation will be provided.
(Emphasis supplied.) Chapter 16.01.00 of the manual provides that inventory forms will be used any time a vehicle is towed and/or stored. Chapter 16.02.00 instructs officers, inter alia: "Lost Property in Vehicle  Inventory of all articles in the vehicle should be shown such as articles of clothing, equipment and tools." (Emphasis supplied.) The companion form contains columns labelled "Item," "Quantity," and "Description of Property Obtained."
In my view, these instructions make clear that an inventory is required for all impounded cars and that the inventory will be comprehensive and detailed, extending down to articles, not merely containers, closed or otherwise. This reading of the instructions is consistent with the testimony of the officer who conducted the arrest and inventory. According to this officer, he consulted with his backup officer and supervisor, and, as in the case of previous arrests, the inventory was performed according to procedures he was supposed to follow. This understanding of the standard instructions by the persons to whom they are addressed is also consistent with the three purposes of the inventory set forth in Opperman and reiterated in Bertine, none of which would be adequately served if closed containers were not opened and inventoried when vehicles are impounded.
The majority's conclusion that here, unlike Bertine, the police operating instructions do not mandate the opening of closed containers is contrary to the facts of Bertine as we have them. Neither Chief Justice Rehnquist's opinion for the Court nor Justice Blackmun's concurring opinion actually quotes the police operating instructions which the Court found mandated opening closed containers for inventory. These instructions were, however, quoted by Justice Marshall in dissent where he argued that no standardized criteria limited the police officer's discretion. The operative words are "the Officer shall conduct a detailed vehicle inspection and inventory and record it upon the VEHICLE IMPOUND FORM." Bertine, 479 U.S. at 380 n. 4, 107 S.Ct. at 745 n. 4 These instructions require a "detailed" inventory but they are certainly no more explicit or definitive than the Patrol instructions quoted above which make the impounding officer responsible for the vehicle, its parts and contents, and require completion of an inventory form listing all articles, such as articles of clothing, equipment, and tools. Chief Justice Rehnquist, for the Court, responded to Justice Marshall's criticism by finding that the instructions not only circumscribed the discretion of individual officers, they also protected the vehicle and its contents and minimized claims of property loss. Bertine, 479 U.S. at 376 n. 7, 107 S.Ct. at 743 n. 7. The standard Patrol instructions here are even more specific than those which the Bertine concurring opinion found "mandate[d] the opening of closed containers and the listing of their contents." 479 U.S. at 377, 107 S.Ct. at 744 (Blackmun, J., concurring). In my view, Bertine stands for the proposition that when a legitimate impoundment is made and standard police instructions mandate that an inventory be conducted, contraband discovered is constitutionally admissible.
The majority also distinguishes United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), holding that Ross addresses probable cause searches only and is not relevant to consent searches. However, in cases cited by petitioner and not distinguished by the majority, federal courts have found Ross relevant to the scope of a consent search. United States v. Kapperman, 764 F.2d 786, 794 (11th Cir.1985); United States v. White, 706 F.2d 806, 808 (7th Cir.1983). Moreover, on the authority of Bertine, Ross is relevant to inventory searches.
"When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of vehicle, must give way to the interest in the prompt *472 and efficient completion of the task at hand." United States v. Ross, supra, 456 U.S. at 821, 102 S.Ct., at 2170.
We reaffirm these principles here: "`[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interest involved in the specific circumstances they confront.'" See [Illinois v.] Lafayette, supra, 462 U.S. 640, at 648, 103 S.Ct. [2605], at 2610 [77 L.Ed.2d 65 (1983)] (quoting New York v. Belton, 453 U.S. 454, 458, 101 S.Ct. 2860, 2863, 69 L.Ed.2d 768 (1981)).
Bertine, 479 U.S. at 375, 107 S.Ct. at 743. The broad application of these quoted words and the fact that the Bertine Court chose to affirm their application to a nonprobable cause, inventory search strongly suggests that the Supreme Court does not take the narrow view of Ross which the majority adopts here. While Ross would not be authority to exceed the specific scope of a restricted consent, as the majority points out, it would appear to be applicable to an unrestricted consent search, or an inventory search, such as here.
In summary, the majority has misapplied Bertine which, in my view, is factually and legally indistinguishable from the case at hand. I would quash the decision below and reinstate the conviction.
OVERTON and McDONALD, JJ., concur.
NOTES
[1] A test later showed that respondent's blood alcohol content was below the legal limit. Wells v. State, 492 So.2d 1375, 1476 n. 1 (Fla. 5th DCA 1986).
[2] Ross itself reached this conclusion when it explicitly distinguished United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). See United States v. Ross, 456 U.S. 798, 811-15, 102 S.Ct. 2157, 2165-68, 72 L.Ed.2d 572 (1982). Chadwick had drawn a clear distinction between automobiles, which have a "diminished expectation of privacy," 433 U.S. at 12, 97 S.Ct. at 2484, and luggage, which has "expectations of privacy ... substantially greater than in an automobile." Id. at 13, 97 S.Ct. at 2484. Sanders had suggested that a warrant was required to open a suitcase where "it was the luggage being transported by respondent at the time of the arrest, not the automobile in which it was being carried, that was the suspected locus of the contraband." 442 U.S. at 767, 99 S.Ct. at 2595 (Burger, C.J., concurring in the judgment). Ross reaffirmed this holding, although it rejected some of Sanders' analysis. 456 U.S. at 824, 102 S.Ct. at 2172. If this conclusion applies when the police actually have probable cause to search luggage, it certainly applies when they do not.

As stated in Chadwick:
Once the federal agents had seized it ... there was not the slightest danger that the footlocker or its contents could have been removed before a valid search warrant could be obtained... . With the footlocker safely immobilized, it was unreasonable to undertake the additional and greater intrusion of a search without a warrant.
433 U.S. at 13, 97 S.Ct. at 2484-85. Moreover, Chadwick expressly noted that the search of the footlocker was a far greater intrusion into interests protected by the fourth amendment than was the mere seizure of the footlocker. Id. at 14 n. 8, 97 S.Ct. at 2485 n. 8.
[3] The following colloquy with the arresting officer occurred:

Q. Did [Wells] give you permission to go into the trunk of that car?
A. Oh, yes, no problem, but he said  I said: "Do you mind if I look in your trunk," and he said, "Sure, go right ahead."
... .
Q. Now, since [Wells] had indicated to you that he did not know what was in the trunk, you clearly did not extend the questioning to say: "Well, whatever I find in the trunk, is it okay if I look in that, too?"
A. No, I didn't.
[4] We acknowledge that this case raises an issue as to whether respondent had standing to assert a privacy interest in the luggage itself, since he apparently contended the luggage was not his. See United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (receding from the "automatic standing" doctrine). We find, however, that the state effectively has waived this argument by failing to raise it below or in this appeal. See Steagald v. United States, 451 U.S. 204, 209, 101 S.Ct. 1642, 1646, 68 L.Ed.2d 38 (1981). Moreover, respondent unquestionably does have a protected privacy interest in the borrowed car he was driving, which confers standing to challenge both the impoundment and inventory search conducted in this instance. See United States v. Posey, 663 F.2d 37 (7th Cir.1981), cert. denied, 455 U.S. 959, 102 S.Ct. 1473, 71 L.Ed.2d 679 (1982); State v. Warren, 59 N.C. App. 264, 296 S.E.2d 671 (1982), aff'd in pertinent part, 309 N.C. 224, 306 S.E.2d 446 (1983); People v. Robinson, 121 Misc.2d 267, 467 N.Y.S.2d 552 (Westchester County Ct. 1983); People v. Zimmerman, 117 Misc.2d 121, 458 N.Y.S.2d 468 (Sup.Ct. 1982).
[5] These three justices also concurred in the majority opinion, and specifically cited footnote 6 as a reason for so doing. 107 S.Ct. at 744. As a ground upon which a majority of the Court agreed, the "no discretion" requirement constitutes a clear holding of the Bertine court.