548 So.2d 820 (1989)
STATE of Florida, Appellant,
v.
Michael ABRAMS, Appellee.
No. 89-00247.
District Court of Appeal of Florida, Second District.
September 8, 1989.
*821 Robert A. Butterworth, Atty. Gen., Tallahassee and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellant.
James Marion Moorman, Public Defender and Paul C. Helm, Asst. Public Defender, Bartow, for appellee.
PARKER, Judge.
The state appeals the trial court's order granting a motion to suppress. We affirm but certify the question to the supreme court.
Michael Abrams was driving on an interstate highway when Officer Livingston pulled over the vehicle being driven by Abrams for an improper lane change. This was the officer's first knowledge of or contact with Abrams. Livingston asked for and received Abrams' driver's license and registration (rental papers) for the car. Livingston testified that he did not have reason to believe that there was any criminal activity afoot at that time. After looking over the driver's license, Livingston asked Abrams to step from the car and explained to Abrams the drug interdiction program. Livingston then asked Abrams, "Do you mind if I look in the car?" Abrams responded, "It's okay. I don't have anything to hide." Livingston testified that Abrams appeared to understand the request and that there were no threats or promises made to induce compliance with the request.
After receiving permission to look in the car, Livingston asked the other occupants of the vehicle to step out of the car. During his search of the vehicle, Livingston found a closed satchel-type purse between the two front seats. Livingston opened the satchel and found papers with Abram's name and a small clear plastic baggie of cocaine powder. Livingston stopped his search at that point, held up the purse, and asked to whom it belonged. Abrams identified it as belonging to him. Livingston then took the keys to the vehicle and unlocked the trunk of the vehicle. The trunk was clean except for a package wrapped in plastic into which Livingston could not see. Livingston used a pen to open the package and saw several pieces of rock cocaine.
Livingston never specifically asked permission to look into containers found in the vehicle or to unlock the trunk. Abrams never withdrew his consent to look in the vehicle nor did he request that the search be terminated. Livingston, in fact, found Abrams to be very cooperative.
Livingston arrested Abrams and the other occupants of the vehicle. Abrams was charged with trafficking and conspiracy to traffic in cocaine. Abrams moved to suppress the cocaine found both inside the bag and in the package in the trunk of the vehicle. The trial court granted the motion and ordered the seized cocaine to be suppressed, finding that the initial stop of the vehicle was justified, that Abrams consented for the officer to look in the vehicle, but that the officer exceeded the scope of Abrams' limited consent.
The central issue of this appeal is whether the driver's consent to look in the vehicle permitted the officer to look inside a closed container within that vehicle. If this consent did not permit the officer's inspection of the contents of the purse, then the search and seizure were illegal, and the contents of the purse and of the package in the trunk of the vehicle were properly suppressed. If, on the other hand, the driver's consent authorized a search of the purse, then the seized cocaine in that purse established *822 probable cause for the officer to search the entire vehicle, including the closed package in the trunk. See United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).
Some recent cases are instructive. In State v. Wells, 539 So.2d 464 (Fla.), cert. granted, ___ U.S. ___, 109 S.Ct. 3183, 105 L.Ed.2d 692 (1989), an officer had consent to open a locked trunk. The officer found a locked suitcase inside the trunk and pried open the suitcase. The supreme court held that the officer exceeded the scope of consent because it was unreasonable for the police to break open a locked or sealed container if the consent did not specifically convey permission to do so. The court relied upon the following colloquy to find that the officer had no actual consent to open the suitcase:
Q. Did [Wells] give you permission to go into the trunk of that car?
A. Oh, yes, no problem, but he said  I said: "Do you mind if I look in your trunk," and he said, "Sure, go right ahead."
* * * * * *
Q. Now, since [Wells] had indicated to you that he did not know what was in the trunk, you really did not extend the questioning to say: "Well, whatever I find in the trunk, is it okay if I look in that, too?"
A. No, I didn't.
Wells, 539 So.2d at 468 n. 3. The Wells factual situation is very similar to the instant case. Upon questioning, Livingston plainly stated that he did not have actual consent to open the satchel, the trunk, or the package found in the trunk. However, the one distinguishing factor in this case is that although the satchel was closed, it was neither locked nor sealed.[*]
The case of Rodriguez v. State, 539 So.2d 513 (Fla.2d DCA 1989) is also similar. In Rodriguez, an officer asked Rodriguez if he could "look" in the car. The officer found a box wrapped in paper lying on the rear floorboard and discovered cocaine when he cut open the box. This court held that Rodriguez's consent was limited to the interior of the vehicle and did not include consent to search the sealed box or the trunk of the vehicle. This court stated, "The search of the sealed box found on the rear floor board was unlawful since the troopers were not given actual consent to open the box nor did they have probable cause to open the box based on knowledge that the appellant was engaged in criminal activity." Rodriguez, 539 So.2d at 513. Although this language could include the opening of an unsealed or unlocked container, the facts of this case were that the box was sealed and that the officer had to cut it open.
In Shelton v. State, 549 So.2d 236 (Fla.3d DCA 1989), a train passenger consented to a search of her purse and tote bag by narcotics officers. Inside the tote bag, the officers found a very heavy, small, gift-wrapped box, which one officer unwrapped in the passenger's presence without any objection from the passenger. Inside the box was cocaine. Citing Wells, the third district stated that the scope of the consent did not extend to the unwrapping of the sealed box.
*823 In Gonzales v. State, 547 So.2d 253 (Fla. 4th DCA 1989), a bus passenger consented to police officers to search his luggage. The officers found a package rolled in the leg of a pair of pants. An officer cut into the package with a knife and discovered that the package contained cocaine. The fourth district, citing Wells, reversed the trial court's order denying the motion to suppress the cocaine, stating that the scope of the consent was exceeded by the police search of a container concealed within the luggage.
In view of the fact that the United States Supreme Court has granted a petition for certiorari review of Wells, Florida v. Wells, ___ U.S. ___, 109 S.Ct. 3183, 105 L.Ed.2d 692 (1989), and the fact that this case involves a search of an unlocked, unsealed purse found inside the interior of a vehicle following the driver's consent for the officer to look inside that vehicle, we certify the following question of great public importance to the Florida Supreme Court:
IF A MOTOR VEHICLE IS LAWFULLY STOPPED BY LAW ENFORCEMENT AND THE DRIVER CONSENTS TO THE OFFICER LOOKING INSIDE THE VEHICLE, DOES THE CONSENT GIVEN EXTEND TO THE SEARCH OF CLOSED CONTAINERS WITHIN THE VEHICLE WHICH ARE NEITHER LOCKED NOR SEALED?
Based upon Wells and the cited cases following Wells, we affirm the trial court's order granting the motion to suppress.
Affirmed.
RYDER, A.C.J. and LEHAN, J., concur.
NOTES
[*] In LaFave's treatise, he states:

Somewhat more difficult is the question of whether such a general consent permits the opening of closed but unlocked containers found in the place as to which consent was given. Ordinarily, it would appear that the answer is yes, particularly if the police have indicated they are searching for a small object which might be concealed in such a container.[60] But there will be cases in which the nature of the police request affirmatively responded to will require a contrary conclusion.[61] 3 W.R. LaFave, Search and Seizure § 8.1(c) (2d ed. 1987). The cases cited in footnote 60 do not contain any Florida cases or cases which are mandatory precedent for this court. Footnote 61 contains the following Florida cases: Luxenburg v. State, 384 So.2d 742 (Fla. 1st DCA 1980) (consent by defendant to officer's request to open a box did not allow officer to slit open a black plastic bag within the box); Moorehead v. State, 378 So.2d 123 (Fla. 2d DCA 1980) (where officer admired defendant's pool cue and asked to look at it, defendant's consent did not extend to officer's act of unscrewing the cue to see what rattled inside).