PER CURIAM.
Lewis Roberson appeals a conviction and sentence for possession of cocaine, contending that the trial court erred in admitting physical evidence seized from a car in which he was a passenger, and erred in admitting statements that he made subsequent to the seizure. We conclude that the physical evidence was obtained pursuant to an illegal search, and reverse.
Roberson was a passenger in a car that was stopped by a highway patrol trooper for speeding. When the driver of the car was unable to produce a driver’s license, Roberson told the trooper that he had a driver’s license and that the car belonged to his aunt. A computer check revealed that Roberson’s driver’s license had been suspended and that a warrant for his arrest was outstanding. The trooper arrested both the driver and Roberson, and because neither of the other passengers had a driver’s license, called a wrecker to tow the car for impoundment.
Before the wrecker arrived, the trooper and another officer conducted an inventory search of the passenger compartment and trunk of the car. The trooper testified that inventory searches upon taking a vehicle into custody are “standard police practice ... with [his] department.” Within a tote bag in the trunk of the car, the officers discovered two aerosol cans with false bottoms. Upon unscrewing the false bottoms, the officers found money and traces of cocaine stored inside the cans.
Both officers testified that Roberson was advised of his rights upon being taken to jail. Roberson signed a form indicating that he understood those rights, but he did not sign the portion of the form indicating that he waived his right to remain silent. After Roberson was advised of his rights, the trooper asked him to identify his belongings among the contents of the car. Roberson claimed the tote bag that contained the aerosol cans and stated that everything in the bag belonged to him. The trooper advised him that money and cocaine had been found in the cans. Roberson admitted that both the money and the cocaine were his, and stated that he would take the “rap.”
Roberson moved to suppress the physical evidence seized from the car and his subsequent incriminating statements on the ground, inter alia, that they were obtained in violation of his constitutional rights. The trial court denied the motion and the case proceeded to a jury trial resulting in a verdict finding Roberson guilty of possession of cocaine.
On appeal, the parties first addressed Roberson’s standing to contest the search of the vehicle. The state contends that Roberson lost his possessory interest and resulting expectation of privacy in the borrowed car when he surrendered the ear keys to the driver. Roberson contends that the borrowed car and its contents were his responsibility, and that in these circumstances he retained a possessory interest and expectation of privacy even as a passenger.
Roberson’s standing is dependent upon whether he had a legitimate expectation of privacy in the area from which the physical evidence was obtained. See Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In determining whether a defendant had a legitimate expectation of privacy in the area searched, the court must evaluate the totality of the circumstances; although not dispositive, ownership of the seized property is a factor to be considered in this evaluation. See Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).
Here, the undisputed facts showed that Roberson borrowed the car from his aunt and the state admitted during closing argument that Roberson had authority over the car. Furthermore, Roberson admitted ownership of the tote bag and its contents, including the physical evidence seized by the officers. Although Roberson *563 was not driving the car at the time it was stopped, he was riding in the ear; thus, he had not relinquished possession and control of or responsibility for the vehicle. Based on the totality of the circumstances, we find that Roberson had a legitimate expectation of privacy in the car and his baggage being transported therein. He therefore had standing, under Rakas and Rawlings, supra, to contest the seizure of the evidence.
Roberson next contends that he was not properly consulted, in accordance with Miller v. State, 403 So.2d 1307 (Fla.1981), regarding alternatives to impoundment of the car. However, in State v. Wells, 539 So.2d 464 (Fla.1989), affirmed, — U.S. -, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), the Florida Supreme Court indicated that Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), has superseded Miller. See also, Robinson v. State, 537 So.2d 95 (Fla.1989). In Wells, the court determined that under Bertine an officer is not required to consult with a legally arrested possessor of a vehicle regarding alternatives to impoundment of the vehicle. In this case, the state notes that the car involved was illegally parked on the shoulder of the interstate and had to be moved, and that since none of the occupants possessed a valid driver’s license, no alternative to impoundment existed. In any event, in accordance with Wells and Bertine, supra, Roberson was not entitled to a consultation as to alternatives to im-poundment upon being legally arrested.
Roberson contends that even if the inventory search was permissible, the opening of the aerosol cans exceeded the scope of a proper inventory search and was unlawful. In Colorado v. Bertine, supra, the United States Supreme Court approved the seizure of contraband discovered within containers found in a closed backpack in an impounded vehicle during an inventory search. The Court emphasized that the search was conducted in accordance with local police procedures that required a detailed inventory of impounded vehicles involving the opening of containers and the listing of their contents and stated that “there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation.” 479 U.S. at 369, 372, 107 S.Ct. at 740, 742, 93 L.Ed.2d at 744, 746. In State v. Wells, supra, the Florida Supreme Court applied Bertine to the inventory search of a locked suitcase within an impounded vehicle and held the search invalid because the record did not establish that the officer was required in every case to make a detailed inventory of the contents of luggage. The opinion refers to the policy manual of the Florida Highway Patrol, but noted that it did not address opening closed containers such as the locked luggage found in that case. 539 So.2d at 469. The court held that
[i]n the absence of a policy specifically requiring the opening of closed containers found during a legitimate inventory search, Bertine prohibits us from countenancing the procedure following in this instance. The police under Bertine must mandate either that all containers will be opened during an inventory search, or that no containers will be opened. There can be no room for discretion.

Id.

In the case before us, the officers found the closed tote bag, which is comparable to the luggage in Wells except for not being locked, in the trunk of the car before the car was removed for impoundment. Without knowing the owner of the bag, they opened it and searched all of the contents. Finding two aerosol cans, they did not just list them on the inventory sheet, but shook the cans and undertook to carefully inspect them to see what, if anything, was inside by opening the false bottoms. At the time, the officers had no probable cause to suspect that the tote bag or the aerosol cans contained illicit drugs or other contraband, and no contention is made by the state that the officers had probable cause to look for contraband. Although the record in this case contains testimony that it was standard department procedure to inventory the contents of vehicles being taken into custody, it does not establish that the searching officers had a standardized poli- *564 ey mandating the opening of closed containers. We therefore hold that the opening of the closed cans constituted an illegal search pursuant to Wells and Bertine and that the evidence obtained during that search must be suppressed.
In so holding, we do not believe that the use of a lock on a closed container is critical to the rationale of Wells. Although the portion of the Wells opinion that discussed the consent search recognized that the “act of locking a container constitutes a manifest denial of consent to open it ... and creates a legally recognized zone of privacy inside that container,” the portion of the opinion discussing inventory searches focused upon closed — not locked —containers. 539 So.2d at 468, 469. Furthermore, Wells relied heavily on Bertine, and in Bertine the backpack that was inventoried was closed, not locked.
Because the incriminating evidence seized pursuant to this invalid search should have been suppressed, the incriminating statements made by Roberson to the officer in response to the questions about the fruits of that search likewise should have been suppressed under the fruit of the poisonous tree doctrine. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
REVERSED.
ERVIN and ZEHMER, JJ., concur.
WENTWORTH, J., dissents with opinion.