702 So.2d 259 (1997)
Raul Emilio RODRIGUEZ, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 96-3314, 96-3046.
District Court of Appeal of Florida, Third District.
December 3, 1997.
Robert L. Bogen, Boca Raton, for appellant.
Robert A. Butterworth, Attorney General, and Sandra S. Jaggard, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., LEVY, J., and BARKDULL, Senior Judge.
PER CURIAM.
The defendant appeals from a judgment of conviction and sentence for trafficking in cocaine. The primary issue on appeal involves the trial court's order denying the defendant's motion to suppress evidence seized from the front seat of his rental car. The order reads in part as follows:
* * * * * *
Undisputed Facts:
At Approximately 8:00 A.M. on May 4, 1994, Metro Dade police responded to 13475 S.W. 29th Street in reference to a call made by Carlos Garcia who had been robbed and locked inside the house at that location.
When the police arrived, they found the door and windows of the house covered with bars and Carlos Garcia locked in the house.

*260 Fire Rescue responded and pried open the gated entranceway and Carlos Garcia exited the house.
Carlos Garcia explained that he and the Defendant, Raul Rodriguez, were doing carpentry work at the home for the owner Armando Fletes. He explained that the Defendant and Armando Fletes accused him of stealing some watches from the home and when he denied taking the property, was hit by the Defendant and Fletes with a wooden stick or handle. They then took his money (approximately $375.00). Mr. Fletes left, but the Defendant and Mr. Garcia stayed in the house overnight. When Mr. Garcia awoke the next morning he found himself alone and locked in the house and called the police.
While the police were talking to Mr. Garcia, the Defendant arrived in a white car, parked in the street in front of the house and exited the car.
When the Defendant exited the car, Mr. Garcia identified the Defendant as the man who had hit him on the head and had taken his money the previous night.
The Defendant admitted to hitting Mr. Garcia and taking his money. He retrieved $375.00 from his pocket which he admitted was the money he had taken from Garcia and handed it over to the police.
The Defendant was placed under arrest for Armed Robbery, etc.
The car the Defendant was driving was seized incident to the arrest and an inventory search was conducted on the scene prior to having it towed. The search revealed two manila envelopes on the passenger seat, one containing $11,000 and the other containing approximately one kilo of cocaine.
The Defendant was charged with trafficking in cocaine.
It was determined that the Defendant had slept at the location the night before and was doing work in the home.
The car was parked in the street alongside the curb in front of the house in a residential neighborhood. The car did not belong to the Defendant. It was a rental car.
* * * * * *
The Defendant obviously had permission to be on the premises. He was doing work on the house owned by Armando Fletes. While the evidence presented did not establish that the Defendant was actually living in the residence while he worked there, he did stay there the night before with the permission of the owner. The Defendant apparently had the permission of Mr. Fletes to stay at the house while working on the house, although it was not established that he had stayed there other than on the night in question.
* * * * * *
Based upon these facts, this Court concludes that the car was legally parked on the roadway with no objection by the homeowner who hired the Defendant to perform work on his home.
Based upon the evidence presented, it does not appear as though the Defendant was actually living in the house, although he stayed overnight the night of the robbery. While it does not appear that the Defendant was living in the house, he did have the permission of the owner to work on the premises and to stay overnight if he wanted to. Therefore, this Court finds that the Defendant was employed by the owner, Mr. Fletes, to work on the house and had permission to sleep at the house.
The State relies on two theories justifying the search of the automobile and the two unsealed envelopes: (1) pursuant to a search incident to a lawful arrest; and/or (2) an inventory search when the car was impounded.
* * * * * *
The State also argues that not only was the search conducted as incident to a lawful arrest, it was also properly searched pursuant to an inventory search of an impounded automobile. This Court finds that although the law appears to clearly support a search incident to a lawful arrest, the facts do not as clearly support the impounding of the car and the subsequent inventory search of the automobile. *261 First, the Defendant argues that after placing a recent occupant of a motor vehicle under arrest, the officer must offer the arrestee an alternative to impoundment.
The U.S. Supreme Court in Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), and the Florida Supreme Court in State v. Wells, 539 So.2d 464 (Fla.1989), have determined that law enforcement need no longer offer the arrested recent occupant of a vehicle an alternative to impoundment of the vehicle, as long as the officer was not acting in bad faith. The Court in Bertine noted that by securing the property, law enforcement served a strong governmental interest in protecting the owner's property from unauthorized interference. Id, at, [373-74, 107 S.Ct. at,] 742. "Many owners might leave valuables in their automobiles temporarily that they would not leave there unattended for the several days that police custody may last." Bertine, at [384, 107 S.Ct. at] 748 quoting from Cooper v. California, 386 U.S. 58, 61, 87 So Ct. [S.Ct.] 788 [790-91], 17 L.Ed.2d 730 (1967).

Bertine and Wells do not appear to be concerned as to whether the car was parked legally or illegally on public property. The issue lies with the motivation of the police impounding the vehicle. The criteria or decision to impound a vehicle must be based on something other than suspicion of evidence of criminal activity.
According to the stipulated facts and the deposition of Detective Robson, which was also stipulated to, Detective Robson impounded the vehicle because "the vehicle was at the crime scene" and "the subject was under arrest. He was going to jail". (deposition, p. 12, lines 4 and 5). Detective Robson also stated that the car was parked on the street, unlocked, with keys still in the ignition. He was also aware that the vehicle did not belong to the Defendant, that it was a rental car and that the Defendant was an invitee as opposed to an actual resident at that location. On the front passenger seat within clear view were two large (8×10 approximate) manila envelopes.
It is clear from Detective Robson's deposition that he simply impounded the vehicle incident to the lawful arrest of its recent occupant, believing that a car not belonging to the Defendant which was parked on a public street outside a home which did not belong to the Defendant was at risk, especially in light of the fact that he had arrested the Defendant for Armed Robbery, a non-bondable offense. Detective Robson did not act in bad faith. His motivation was not to try to uncover the fruits of a crime since the Defendant had already returned the money taken when interviewed prior to his arrest.
The Defendant argues that because the vehicle was legally parked in the street in front of the house he was temporarily residing at, the police had no right to impound the vehicle. The Defendant correctly points out the distinction regarding vehicles located on private property and at locations where automobiles are routinely parked at the Defendant's residence or a residence he is temporarily residing at. The vehicle was not, however, parked on the property itself, but on the public street and while there was evidence that the Defendant spent the previous night at the residence, there was no evidence that he was residing at the house. The other important distinction is that the car did not belong to the Defendant. The car was a rental car. Because the Defendant was being arrested for a non-bondable offence, this court finds impoundment of the vehicle by the police to be reasonable to protect not only the Defendant's property, but the owner of the vehicle's property, especially in light of the fact that the vehicle was unlocked, the windows were down, the keys were in the ignition and there were items visible on the front seat of the car.
Whether the vehicle was searched as incident to the lawful arrest of its recent occupant or whether the vehicle was impounded and an inventory search was conducted, it is clear that law enforcement had the right to search the open envelopes in clear view on the front seat of the car or any other container located in the car. [New York v.] Belton, [453 U.S. 454] at 459 [101 S.Ct. 2860 at 2863, 69 L.Ed.2d 768 (1981)]; State v. Wells, 539 So.2d 464 (Fla. 1989).

*262 CONCLUSION:

* * * * * *
While this Court need not go further, this Court does find that under the circumstances of this case, the police also had the right to impound the vehicle as it was parked on a public street in front of a house the Defendant did not own and was at best only a temporary resident. The car was unlocked with items on the seat and the Defendant was being arrested for a non-bondable offense. In addition, there was no bad faith shown. Since the police had the right to impound the vehicle, an inventory search of the vehicle and its opened containers was lawful.
The Defendant's Motion to Suppress the Evidence is therefore, hereby DENIED.

The defendant argues that the search cannot be justified as an inventory search incident to impoundment. Prior to addressing the issue of whether the inventory search was lawful, we must establish that the impoundment itself was lawful. See Altman v. State, 335 So.2d 626, 628 (Fla. 2d DCA 1976); Gordon v. State, 368 So.2d 59, 62 (Fla. 3d DCA 1979)(Hubbart, J., dissenting). Courts have upheld the reasonableness of decisions by law enforcement officers to impound vehicles in cases where leaving the vehicle would present an inviting target for thieves or vandals. See Gordon, 368 So.2d at 62; Mattson v. State, 328 So.2d 246 (Fla. 1st DCA 1976) (impoundment valid to protect car from theft or damage where locked car was lawfully parked across from local night spot). Sub judice, a risk of theft or vandalism certainly existed where the defendant was under arrest for a non-bondable offense, and the rental car was left on the street with the doors unlocked, windows down, and keys in the ignition.
In Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), the United States Supreme Court held that the fourth amendment is not violated where the police, pursuant to a lawful custodial arrest and in accordance with standardized procedures, impound an individual's vehicle and conduct a warrantless inventory search. The Court held that it was permissible for law enforcement to exercise discretion in the determination of whether to impound a vehicle or leave it lawfully parked after the driver of the vehicle has been arrested, but limited such permissibility to cases wherein the "discretion is exercised according to standard criteria and on the basis of something other than suspicion of criminal activity." Id. at 375, 107 S.Ct. at 743. A copy of Dade County Code § 30-384(a) was included in the record. This section provides circumstances under which a vehicle may be impounded, including when the driver "is taken into custody by a law enforcement officer and such vehicle would thereby be left unattended upon a street...." (R. 76). This supports the conclusion that the determination to impound was conducted according to standardized criteria. Accordingly, the impoundment itself was lawful.
The Bertine Court emphasized that the validity of an inventory search requires that the search be undertaken in good faith and conducted according to standardized criteria. An inventory search serves the needs of protection of the owner's property, protection of police against claims of lost or stolen property, and protection of police against potential danger from such things as explosives. See id. at 372, 107 S.Ct. at 741; South Dakota v. Opperman, 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976). Sworn testimony and Standard Operating Procedure 4-12, included in the record, further indicate that standard procedures exist to govern the inventory search of an impounded vehicle.
In the instant case, there was no showing that law enforcement acted in bad faith or for the sole purpose of investigation. Under the totality of the circumstances, we conclude that the seizure of the evidence in this instance was permissible as incident of lawful impoundment and the trial court did not err in denying the defendant's motion to suppress. We find no merit to the defendant's remaining point. Ferron v. State, 619 So.2d 506 (Fla. 3d DCA 1993); Green v. State, 602 So.2d 1306 (Fla. 4th DCA), rev. denied, 613 So.2d 4 (Fla.1992); State v. Duran, 550 So.2d *263 45 (Fla. 3d DCA 1989). Therefore, the conviction is affirmed.
Affirmed.