STATE of Missouri, Respondent,

v.

Regina MELVILLE, Appellant.

WD 46272.

Missouri Court of Appeals, Western District.

Nov. 9, 1993.

Jerome S. Antel, II, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and
BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

Regina Melville appeals her court-tried conviction of drug trafficking in the second degree for which she was sentenced to six years imprisonment.

· About 1:40 a.m. on November 19, 1990, Trooper David Spurgeon stopped a 1990 white four-door Lincoln Continental bearing Georgia license plates for speeding on I–70 in Callaway County. Defendant was a passenger in the car. Before stopping the car, Trooper Spurgeon ran a check on the license plates which came back as not on file. He asked the driver, John Backhaus, to produce his drivers license and to accompany him to the patrol car. Spurgeon testified that Backhaus was nervous and twice passed over his drivers license as he looked through his wallet. When the trooper asked Backhaus if there was anything illegal in the vehicle, he appeared nervous and he did not respond. The question was repeated and Backhaus replied in a stuttering manner that there was nothing illegal in the car. The trooper asked if he could look through the car. Backhaus replied, "I dont know if Regina would like you going through her things." Spurgeon went to the passenger side of the front seat of the Lincoln automobile, and asked the defendant her name and from where they were traveling. She identified herself as Regina Melville and described their journey from Georgia to Boston, which contradicted Backhaus earlier statement that their travels had originated in Arizona. Spurgeon asked the defendant if there was anything illegal in the car and if he could look through the car. She glanced toward the back seat where the third occupant, Joseph Parolisi, was seated and did not respond. Spurgeon asked again, "if [he] could search the car." The defendant replied, "Yeah, sure, you can look around."

Spurgeon searched the front seat area including the glove box where he found one thousand, eight hundred thirty dollars ($1,830.00) in cash, which caused him to be suspicious. He then searched the back seat including two shoulder totes found there.

Spurgeon removed the key from the ignition and opened the trunk where he found two more shoulder totes and four suitcases. A search of the two shoulder totes revealed no contraband. In one of the suitcases he found four yellowish brick-shaped parcels. He believed the contents to be a controlled substance, possibly cocaine. It was later determined that the bundles from all of the suitcases amounted to approximately one hundred twenty-nine pounds of marijuana. During the time that the search was being conducted, the defendant was standing in front of the Lincoln automobile.

Upon finding the brick-shaped parcels, Spurgeon shut the trunk and asked the defendant and Parolisi to whom the suitcases belonged. Both denied they owned a suitcase and Spurgeon arrested Backhaus. Backhaus only claimed ownership of one of the shoulder totes. A backup officer was called and when he arrived the other two occupants were arrested. The defendants name was listed on the name tag on one of the suitcases in which marijuana was found.

All three occupants were charged. A lengthy hearing was held on the motions to suppress filed by all three occupants of the vehicle. The court found against the defendants at which point the state dismissed the charges against Backhaus and Parolisi. Defendants bench trial resulted in a finding of guilty and subsequent sentence of six years imprisonment. This appeal followed raising one issue: whether the court erred in overruling the defendants motion to suppress the controlled substance because the search exceeded the scope of the consent given.

■ The review of the trial court's order causes the reviewing court to consider the facts stated favorably to the order challenged on appeal. *State v. Blair,* 691 S.W.2d 259, 260 (Mo. banc 1985), cert. denied, 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987). We look "only to determine whether the evidence was sufficient to support the ruling." *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990). The trial courts decision on the motion to suppress should be sustained if the evidence is sufficient to sustain its finding. *Blair,* 691 S.W.2d at 260.

■ The state raises a standing issue maintaining that the defendant does not have standing to challenge the search of a vehicle rented to Parolisi with Backhaus as the authorized driver when the defendant denies any interest in the property in the trunk. The Missouri Supreme Court has held that a defendant has standing to challenge a search or seizure if defendant was on the premises during the search; alleged a proprietary or possessory interest in the premises; or was charged with an offense that includes, as an essential element, possession of the seized evidence at the time of the challenged search and seizure. *State v. Johnson,* 598 S.W.2d 123, 127 (Mo. banc 1980), cert. denied, 449 U.S. 1067, 101 S.Ct. 795, 66 L.Ed.2d 611 (1980); see also *State v. Lorenzo,* 743 S.W.2d 529, 531 (Mo.App.1987). Defendant was charged with trafficking in the second degree, specifically with possession of more than thirty kilograms of marijuana. See § 195.223, Subd. 7, RSMo Supp.1990. As possession of the marijuana is an essential element of the crime as charged, defendant has standing to challenge the search of the automobile.

■ The sole point raised by the defendant is whether Trooper Spurgeons search of the trunk and the suitcase exceeded the scope of the consent given by defendant. The scope of the search is limited to the extent of the consent given. *United States v. McBean,* 861 F.2d 1570, 1573 (11th Cir.1988).

■ A consent search is a recognized exception to the requirements of probable cause and a search warrant. *State v. Hyland,* 840 S.W.2d 219, 221 (Mo. banc 1992). The standard for measuring the scope of one's consent under the Fourth Amendment is that of objective reasonableness. *Florida v. Jimeno,* 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). The court must consider what the "typical reasonable person [would] have understood by the exchange between the officer and the [one granting the consent]." Id. at ——, 111 S.Ct. at 1803–04. Furthermore, the scope of a search is generally defined by its expressed object. Id. at ——, 111 S.Ct. at 1804.

The extent of the search in this case is governed then by the totality of the circumstances, and specifically, by the police officer's identification of the expressed object of the search—anything illegal in the car— his question: "if [he] could search the car"; and the defendant's response: "Yeah, sure, you can look around." We consider what a typically reasonable person would have understood by this question and its response under this fact situation.

The extent of a lawful search was discussed in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) in which the Court held:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.... When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

Id. at 820–21, 102 S.Ct. at 2170–71. [Footnotes omitted, emphasis added]

Ross involved a search warrant, but the same rules that apply to search warrants also apply to searches authorized by consent. See *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). If the search in this case was legitimate, the fact that it extended into the trunk of the car was permissible. Ross establishes that the consensual search here properly extended to the trunk of the vehicle.

This court addressed a very similar fact situation in the case of *State v. Law*, 847 S.W.2d 134 (Mo.App.1993). In that case, the driver was asked if he had anything illegal in his vehicle and he replied that he did not. The officer asked if Law would mind if the officer searched his vehicle. Permission was given and Law opened the trunk revealing several bags. The officer opened one of the bags and found two shaving kits. When one of the kits was opened it revealed a large amount of cash wrapped in rubber bands. At this point Law was handcuffed for safety purposes and the officer continued his search by opening the second shaving kit. Inside was a prescription medicine bottle which contained marijuana and marijuana seeds. Law complained that the scope of the search exceeded the consent given when the officer opened the closed bags and containers found in the bags. *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), was the authority the court followed in sustaining the search in Law.

In Jimeno, the defendant filed a motion to suppress cocaine discovered in a closed paper bag found in his car after he had been stopped for a traffic violation. When Jimeno gave permission to search, the officer located a folded paper sack on the floorboard of the rear seat which contained cocaine. The Jimeno court held that "[t]he standard for measuring the scope of a suspects consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Id. at 1803–04. In our case, as in Jimeno, the expressed object of the search was illegal drugs and consent was given without any limitation. A reasonable person would be expected to know that illegal substances would not be strewn about in the car, but rather are carried in some type of container frequently found in the trunk of a vehicle. Id. at ——, 111 S.Ct. at 1804; Law, 847 S.W.2d at 137. The Supreme Court observed:

> We think that it was objectively reasonable for the police to conclude that the general consent to search respondents car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container. "Contraband goods rarely are strewn across the trunk or floor of a car." The authorization to search in this case, therefore, extended beyond the surfaces of the cars interior to the paper bag lying on the cars floor.

*Jimeno,* 500 U.S. at ——, 111 S.Ct. at 1804 (quoting *Ross,* 456 U.S. at 820, 102 S.Ct. at 2170).

The Southern District in *State v. Marshell,* 825 S.W.2d 341 (Mo.App.1992), allowed the police officer to search two pieces of luggage stored in a compartment under the defendants bed in his mobile home. The officer stated that he was looking for illegal drugs and asked if he could search the vehicle. The defendant responded, "Go ahead and search. I dont care." Id. at 343. The luggage was located in the bedroom of the motor home under the bed. In the luggage he found and opened one large bundle and three smaller bundles wrapped in gray duct tape containing marijuana. The court held that a "typically reasonable person would have understood that [the officer] was asking to search those places in the motor home where drugs or weapons could be kept, including luggage and other containers." Id. at 345.

In *United States v. Harris,* 928 F.2d 1113 (11th Cir.1991), a factually similar case, the deputy found the illegal drugs in two zipped pieces of luggage in the trunk of the vehicle. The deputy asked Harris if he could look in the car to make sure everything was "okay." Harris initially refused but reconsidered and said; "Go ahead and look." The deputy had explained to Harris that he was looking for illegal goods. The deputy searched the car's interior, then took the car keys out of the ignition and opened the trunk. In the trunk the deputy found four pieces of luggage including a red bag and a black nylon zipper bag. He unzipped the red bag and found cocaine. Harris was arrested, handcuffed, and placed in the patrol car. The officer then opened the black nylon zipper bag and found more cocaine. The court considered it significant that although Harris was physically present during the search he did not limit the search even though he had ample opportunity. Id. at 1117–18. Additionally, the court stated that both the deputy and Harris knew the deputy was looking for illegal drugs and both would reasonably interpret his consent to include places where illegal drugs could reasonably be hidden. Id. at 1118 (citing *United States v. Kapperman,* 764 F.2d 786 (11th Cir.1985)).

To the same effect is the case of *United States v. Smith,* 901 F.2d 1116 (D.C.Cir. 1990), cert. denied, 498 U.S. 863, 111 S.Ct. 172, 112 L.Ed.2d 136 (1990), which was concerned with the legality of a police officers search of a closed container in a leather tote bag. A closed brown paper bag containing cocaine was found inside the tote bag. The defendant had consented to the search of the tote bag and the court held the consent extended to the brown paper bag. The case makes reference to a number of state court decisions as pertinent and persuasive, which allowed consent to search a container to extend to items found within. Id. at 1118–19.

■ The dissent in this case would require that a police officer ask for permission to search each new container which may appear while the search is in progress. In *Smith,* 901 F.2d at 1118 (quoting *United States v. Battista,* 876 F.2d 201, 207–08) the court characterized this requirement of asking for new permission for each container found as a game of "Mother-may-I, in which [the officer] would have to ask for new permission to remove each article from the suitcase to see what lay underneath." Id. The court remarked that the defendant was informed early on that he was suspected of carrying illegal drugs. When the defendant consented to the search it was not in the abstract, rather, "he authorized a search for drugs." Id. [Emphasis in original]. We decline to impose such an unrealistic and unreasonable restriction on law enforcement officials ability to promptly and efficiently do their jobs. See Id.

The trial court does not indicate that defendant in any manner delimited her consent, which she had a right to do. *Jimeno,* 500 U.S. at ——, 111 S.Ct. at 1804; *Hyland,* 840 S.W.2d at 222; *Law,* 847 S.W.2d at 136. We conclude that although defendant stood in close proximity to where the search was being conducted, she placed no limitations on the scope of the search to which she consented. "A reasonable person, viewing this scene objectively, would necessarily conclude from [the defendants] verbal and nonverbal actions that [the defendant] consented to the scope of the search [the trooper] conducted." *Hyland,* 840 S.W.2d at 222. The trial court

did not err in overruling the motion to suppress physical evidence.

The conviction of drug trafficking in the second degree is affirmed.

HANNA and BRECKENRIDGE, JJ., concur.

BERREY, P.J., files separate dissenting opinion.

BERREY, Judge, dissenting.

I respectfully dissent.

The majority opinion has stretched the meaning of "yeah sure you can look around" to a blanket consent to search. I do not agree. "Look around" means just what it says. It does not say or imply and a reasonably objective person would not assume "look around" could be transposed to mean unzip and untape the closures on my suitcases and search them.

The trooper exceeded the specific authority granted him by Regina Melville to "look around." I would sustain Melville's motion to quash the evidence seized from her zipped and taped shut suitcases.

The majority has relied upon State v. Law, 847 S.W.2d 134 (Mo.App.1993) as supportive of their position. In Law the appellant was asked by the trooper if "he would mind if Jackson searched his vehicle." The trooper testified that appellant said "no, he did not mind." Thereafter, Jackson asked appellant to remove his keys from the ignition and open the trunk. Appellant did so and stood beside Jackson at the trunk. Id. at 135. Appellant was able to view Jackson opening a nylon bag and two shaving kits contained therein. He made no objection.

In the instant case, the factual situation is significantly different. Here, after being asked a second time by Trooper Spurgeon "if [he] could search the car," Melville replied "Yeah, sure you can look around." Having received the qualified permission to "look around," the officer proceeded to search the interior of the car. Then, unlike in Law, Trooper Spurgeon removed the keys from the ignition himself, and proceeded to open the trunk. During this time, and again unlike the Law setting, Melville was standing in front of the car. Finally, after opening the trunk and with Melville still at the front of the car, Trooper Spurgeon untaped and unzipped a closed suitcase in which he found what he believed to be a controlled substance. All of these circumstances are clearly distinguishable from those in Law.

The majority cites Florida v. Jimeno, 500 U.S. ——, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) as supportive. The facts are substantially different than the instant case. In Jimeno, officers overheard Jimeno arrange what they believed to be a drug deal. Jimeno was then stopped on a red light violation and consented to a search of his car. He did so after the officer told him he had been stopped for a traffic infraction, and after the officer told him of his suspicion that he was carrying narcotics in the car. Id. at ——, 111 S.Ct. at 1803. Furthermore, the officer advised Jimeno that he "did not have consent to search his car." Id. Nevertheless, Jimeno unequivocally consented to the search. The officer then searched, found a brown paper bag on the floorboard, picked it up and opened it, and found cocaine therein.

The factual distinctions in Jimeno and the instant case are obvious. There is a significant difference between Jimeno's unequivocal consent to search after being advised he did not have to consent, and Melville reluctantly agreeing to Trooper Spurgeon "looking around." There is also a significant difference between finding an unsealed paper bag in the floorboard of the car and looking into it, as in Jimeno, versus finding closed, zipped and sealed suitcases in the trunk of the car in the instant case.

It is also important to note that Chief Justice Rehnquist, writing for the seven member majority in Jimeno, recognized the distinction here being drawn when he stated,

The facts of this case are therefore different from those in State v. Wells, supra [539 So.2d 464 (Fla.1989)], on which the Supreme Court of Florida relied in affirming the suppression order in this case. There the Supreme Court of Florida held that consent to search the trunk of a car did not include authorization to pry open a locked briefcase found inside the trunk. It

is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag. (Emphasis Added). *Id.* at ——, 111 S.Ct. at 1804.

The Fourth Amendment's guarantee of protection against unreasonable searches and seizures "marks the right of privacy as one of the unique values of our civilization, ..." *McDonald v. United States,* 335 U.S. 451, 453, 69 S.Ct. 191, 192, 93 L.Ed. 153, 157 (1948). The state's strong desire to eradicate drug trafficking is a noble cause. Illegal drugs pose a serious threat to the integrity of our system of government. "We must not forget, however, that at the core of this system lies the Constitution, with its guarantees of individual's rights. We cannot permit these rights to become fatalities of the government's war on drugs." *United States v. $38,000.00 in U.S. Currency,* 816 F.2d 1538, 1548 (11th Cir.1987).

In the instant case we do not have a blanket "consent" as in *Jimeno.* It strains credulity to believe the officer could possibly interpret Melville's comment "Yeah, sure, you can look around," as tantamount to an unrestricted consent to search. Such thought is not objectively reasonable. It would have been so very easy for Trooper Spurgeon, once he opened the trunk and saw the bags, to ask Melville for her consent to search them. Unfortunately, he chose not to do so and proceeded with an unauthorized and illegal search.

The trial court erred in overruling the motion to suppress.