STATE of Missouri, Plaintiff–
Respondent,

v.

Richard I. JANUARY, Defendant–
Appellant.

No. 18993.

Missouri Court of Appeals,
Southern District,
Division One.

March 3, 1994.

Stephen T. Lada, Asst. Public Defender, Springfield, for defendant-appellant.

Thomas E. Mountjoy, Pros. Atty., Barbara A. Bean, Asst. Pros. Atty., Greene County, Springfield, for plaintiff-respondent.

PARRISH, Chief Judge.

Richard I. January (defendant) was convicted of assault in the third degree, § 565.-070.1(1), RSMo 1986, a class A misdemeanor. He was sentenced to confinement in the Greene County jail for 180 days. Execution of sentence was suspended and defendant was placed on probation for a term of 2 years. This court affirms.

This was a court-tried case.

The trial court's findings have the force and effect of a jury verdict. Rule 27.01(b). Its judgment is to be affirmed if there is substantial evidence to support its findings. *State v. Giffin,* 640 S.W.2d 128, 130 (Mo.1982). On appeal all evidence tending to prove defendant's guilt is accepted as true, together with all inferences favorable to the state that can be drawn from the evidence. *Id.* Contrary evidence and inferences are disregarded. *Id.*

*State v. Marshell,* 825 S.W.2d 341, 342 (Mo. App.1992). This court does not weigh the evidence that was presented before the trial court. It reviews the record to ascertain if there was sufficient evidence from which the trial court could reasonably have found defendant guilty. *State v. Harris,* 774 S.W.2d 487, 491 (Mo.App.1989). If there was sufficient evidence, the judgment and sentence will be affirmed. The record on appeal, reviewed in this manner, discloses the following.

On September 29, 1993, defendant resided at the Madison Towers in Springfield, Missouri. Early that morning, about 1:00 or 2:00 a.m., he was returning to his residence. His apartment was on the sixth floor of the building. Defendant and two other persons entered an elevator. One of the others, Terry Winston, was going to his apartment, also on the sixth floor of Madison Towers. The third person, Michael Benton, accompanied Winston.

The three got off the elevator at the sixth floor. Michael Benton explained what happened:

Q. [By the assistant prosecuting attorney] All right. Were you inside the ele-

vator or outside on a floor when something occurred?

A. Outside.

Q. Okay. Were you in someone's apartment? Or were you in—

A. In the hallway.

Q —an open hallway?

A. Hallway.

Q. Okay. Can you tell the Judge what actually took place after exiting the elevator?

A. We got off the elevator. And I remember I said to Terry, I said, "Man, we better watch out. Something is not right with this," you know—Richard. And we got to walking, and we turned down the hallway. And it was right in there somewhere where we had—That's fuzzy right there. It really is. It—I don't know what—It's—It's—I don't know if he got me when I—when I turned around or—or—We were sitting there, and I know we had an exchange of words then.

. . . . .

Q. Okay. Well, let's go to what actually happened.

A. Okay. He attacked me—The way I thought it—It was like right as Terry was starting to go into his place and I was still out there, that's when I got attacked. It was about right at that time.

Q. Okay.

A. And we started wrestling around, me and Richard did. And—And then, I got up. And I didn't know that I was cut at the time. And then, I started to back up. And he was backing me up down the hallway. And then, I saw blood on the floor. And then, when we were out in front of this lobby, he started beating this chair up against the—the wall.

Michael Benton testified that he got off the floor after wrestling with defendant and ran away. Benton stated that his palm was cut; that the cut was "[t]hree and a half, four inches" long. He left through a fire exit and walked down a stairway. When he got to the first floor, the police were there. Benton was taken to a hospital. The cut on his hand

was treated. The wound was closed with "[t]en or eleven" stitches.

Police officer Todd Blair was dispatched to the Madison Towers after the incident was reported. He interviewed defendant. Officer Blair described defendant's appearance:

The subject, as I was talking to him, he acted very confused, irrational. His thoughts were racing. He was very nervous, very nervous. He kept putting his hands in his pockets. And I told him several times to remove his hands. And he kept putting them in his pocket. And at—at that point, that made me somewhat nervous.

Officer Blair testified that he asked defendant what happened; that defendant answered, "I was on the elevator with two subjects. I felt like they were going to jump me. So, I pulled a razor blade out of my pocket and cut them." The police officer handcuffed defendant and searched him. The officer explained, "And he told me the razor blade was in his right pocket, and I removed the razor blade at that time."

 The testimony of Michael Benton and Officer Blair provided sufficient evidence from which the trial court could reasonably have found defendant guilty. A trial court sitting as the trier of fact may believe all, part or none of the testimony of any witness. *In re Estate of Danforth*, 705 S.W.2d 609, 611 (Mo.App.1986). Obviously, the trial court believed the testimony of Mr. Benton and Officer Blair. The trial court committed no error by denying defendant's motion for acquittal at the close of all evidence or by finding defendant guilty and imposing sentence for assault in the third degree. Defendant's point is denied. The judgment and sentence are affirmed.

SHRUM and MONTGOMERY, JJ., concur.